**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FreeLife International, Inc., a Connecticut corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>American Educational Music Publications Inc., a Delaware corporation; David Lucas Burge,<br><br>　　　　Defendants/Counterclaimants | No. CV07-2210-PHX-DGC<br><br>**ORDER** |

Plaintiff FreeLife International, Inc. (FreeLife) has filed a motion for partial summary judgment regarding its breach of contract claim. Dkt. #96. FreeLife also filed a motion for summary judgment on Defendant David Lucas Burge's defamation counterclaim. Dkt. #96. Defendants filed a motion for summary judgment on all of FreeLife's claims. Dkt. #100. Defendants filed their motion for summary judgment and statement of facts under seal (Dkt. ##100, 101), but also filed a motion requesting that these documents not be sealed. Dkt. #95. The parties filed a joint motion to seal exhibit A to FreeLife's statement of facts (Dkt. #97, Ex. A). Dkt. #105. FreeLife filed a motion for leave to file a surreply in response to Defendants' motion for summary judgment. Dkt. #116.

Each motion is fully briefed. No party has requested oral argument. For the reasons that follow, the Court will grant in part and deny in part FreeLife's motion for partial summary judgment on the breach of contract claim, grant FreeLife's motion for summary

1 judgment on Burge's defamation counterclaim, and deny Defendants' motion for summary
2 judgment on FreeLife's claims.[1] The Court will also grant in part Defendants' motion to
3 unseal their motion for summary judgment and statement of facts, grant the joint motion to
4 seal, and deny FreeLife's motion for leave to file a surreply.

**I. Background.**

FreeLife is a direct sales company that markets and distributes its products through a network of individual distributors called "marketing executives." FreeLife allows individuals to become marketing executives through an online application on its website, www.freelife.com. The applicant provides certain personal information and indicates whether he has read and agreed to FreeLife's policies and procedures by clicking either "I Accept" or "I Deny." Before accepting or denying, the applicant is provided with a hyperlink to a PDF version of the policies and procedures. The policies and procedures include a non-disparagement clause which states that the marketing executive will not disparage FreeLife.

In late September of 2007, Burge launched a website titled www.breathe.org that contained commentary and articles regarding FreeLife's products. The website focused on the manufacturing process for Himalayan Goji® Juice – FreeLife's best-selling product – and on FreeLife's marketing strategies and compensation system. When FreeLife learned about www.breathe.org, it wrote a response letter that refuted Burge's claims. FreeLife placed the letter on its website, www.freelifefacts.com. The letter does not identify Burge by name, nor does it identify his company, American Educational Music Publications, Inc.

On September 29, 2007, near the time he launched www.breathe.org, Burge visited www.freelife.com and submitted an application to become a FreeLife marketing executive. Burge clicked the "I Accept" button after having received access to the PDF copy of

---

[1] Both Burge and American Educational Music Publications, Inc. move for summary judgment. In the motion and in the reply, however, Defendants make no arguments as to why American Educational Music Publications, Inc. is entitled to summary judgment. The motion will be denied in its entirety as to both Defendants.

FreeLife's policies and procedures.

After determining that Burge owned www.breathe.org, FreeLife filed suit against Burge and American Educational Music Publications, Inc., alleging defamation, intentional interference with contract, and breach of contract. Burge filed a counterclaim, alleging defamation based on the response letter FreeLife posted on www.freelifefacts.com. The parties have engaged in extensive discovery.

**II.     Summary judgment standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    FreeLife's breach of contract claim.**

FreeLife claims that a contract was formed when Burge visited www.freelife.com and applied to become a marketing executive. According to FreeLife, the contract consists of both the terms of the application and the policies and procedures provided to Burge before he clicked "I Accept." The policies and procedures contain a non-disparagement clause which states that "[e]ach Marketing Executive must not disparage other Marketing Executives, FreeLife's products/services, the Compensation Plan, or company employees to other Marketing Executives or third parties." Dkt. #98, Ex. 3. FreeLife claims that Burge breached this provision by launching and maintaining www.breathe.org.

FreeLife seeks summary adjudication on four separate issues relating to the breach of contract claim. Those issues are whether (A) FreeLife and Burge entered into an enforceable

1  contract, (B) the contract contained an enforceable non-disparagement clause, (C) the term
2  "disparage" in the non-disparagement clause should be given its plain meaning, and
3  (D) Burge breached the non-disparagement clause in some manner. The Court will grant
4  summary adjudication on the first three issues and deny it on the fourth.

Defendants seek summary judgment on the entire breach of contract claim. They argue that the contract does not provide for damages in the event of breach of the non-disparagement clause and that FreeLife has presented no colorable evidence of damages.

### A. FreeLife and Burge entered into a contract.

"'[F]or an enforceable contract to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained.'" *Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610, 617 (Ariz. Ct. App. 2007) (quoting *Savoca Masonry Co. v. Homes & Son Constr. Co.*, 542 P.2d 817, 819 (Ariz.1975)).[2] There must be mutual assent to all material terms. Such assent is determined by an examination of objective evidence and not "the hidden intent of the parties." *Hill-Shafer P'Ship v. Chilson Family Trust*, 799 P.2d 810, 815 (Ariz. 1990).

Defendants argue that there was no contract between Burge and FreeLife because Burge never intended to buy FreeLife products or conduct business as a marketing executive. Dkt. #100 at 18-19. Defendants also argue that the contract is not binding because Burge never satisfied certain conditions that were necessary to make the contract enforceable. Dkt. #100 at 18-19. Neither argument is persuasive.

It is undisputed that FreeLife's website offered an online application that allowed www.freelife.com visitors to apply to become marketing executives. Dkt. #111 at ¶ 5. It is also undisputed that Burge clicked the button on the website indicating that he wanted to become a FreeLife marketing executive, entered his name, birth date, address, and a social security number (although the validity of the number is disputed), payed the enrollment fee

---

[2] The parties do not address choice of law issues in this diversity case, but both sides cite Arizona case law. The Court will apply Arizona law.

with his credit card, looked at the FreeLife policies and procedures, and clicked the "I Accept" box. Dkt. #111 at ¶¶ 25-32; Dkt. #97, Ex. A at 73-85. As the Court stated previously, these undisputed facts lead to one conclusion: Burge agreed to the terms of FreeLife's contract. Dkt. #11 at 4. Even if Burge had no intention of buying FreeLife products or conducting business as a marketing executive, his private intention does not invalidate the contract. Burge never revealed this intention to FreeLife, and undisclosed intentions do not negate a contract or render it unenforceable. *Hill-Shafer*, 799 P.2d at 815 ("Mutual assent [to a contract] is based on objective evidence, not on the hidden intent of the parties.").

Defendants argue that FreeLife's policies and procedures require an applicant to "earn commissions from FreeLife" before he or she can become a marketing executive. Because Burge never earned commissions, Defendants argue, he never actually became a marketing executive and is not bound by the contract. Dkt. #100 at 18-19. The Court does not agree.

In a section titled "Executing and Renewing a Marketing Executive Agreement," the policies and procedures do provide that an applicant must "earn commissions from FreeLife." Dkt. #98, Ex. 3, ¶ 7. This provision, however, is most reasonably read as a requirement that applies to the renewal of the marketing executive agreement, not to their initial creation. The policies and procedures make clear that an applicant cannot earn commissions until after he or she becomes a marketing executive. *Id.*, ¶¶ 8, 22. If Defendants' reading were correct, new applicants could never could become marketing executives because they never could earn commissions before applying. Courts avoid such nonsensical interpretations of a contract. *See Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1165 (D. Ariz. 2005). The more reasonable reading is that earning a commission is required for renewal of the marketing executive agreement, a reading consistent with the heading of the section and its reference to renewals.

In sum, the undisputed evidence shows that Burge entered into a contract with FreeLife. He completed the application, provided the requested information, paid the required free, and stated affirmatively that he accepted the terms. His undisclosed intent

never to buy FreeLife products does not negate the validity of the contract.

### B. The non-disparagement clause is valid.

Defendants first argue that the non-disparagement clause found in the policies and procedures is unenforceable because it exceeds the parties' reasonable expectations. Under Arizona law, courts generally enforce boilerplate language or clauses in non-negotiated, standardized contracts. *Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987); *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 399 (Ariz. 1984). These clauses are not enforced, however, when the "drafter had reason to believe that the adhering party would not have assented to the particular term had he or she known of its presence." *Gordinier*, 742 P.2d at 283. This "[r]eason to believe may be inferred from the fact that the term is bizarre or oppressive, from the fact that it eviscerates the non-standard terms explicitly agreed to, or from the fact that it eliminates the dominant purpose of the transaction." *Darner*, 682 P.2d at 397. Defendants argue that FreeLife should have known Burge would not knowingly assent to the non-disparagement clause because it is bizarre and oppressive, and because Burge already was operating www.breathe.org when he agreed to the contract. Again, the Court does not agree.

Defendants have presented no evidence that FreeLife knew Burge was operating www.breathe.org when he agreed to the contract. FreeLife's knowledge of Burge was limited to the information he placed in his on-line application. Defendants provide no basis for concluding that FreeLife knew Burge would not agree to the non-disparagement term.

Defendants also present no evidence that the non-disparagement clause is objectively bizarre or oppressive. Defendants argue that non-disparagement clauses are bizarre except when included in contracts resolving employment disputes, but Defendants cite no authority for this position. Although a number of cases have upheld non-disparagement clauses in such agreements (*see* Dkt. #110 at 3-4), Defendants cite no authority to suggest they are limited to those agreements. To the contrary, the interests of employers protected by employment separation agreements – to be free from disparagement by their own former

employees – is akin to the interest FreeLife sought to protect here – to be free from disparagement by its own marketing executives. The Court cannot conclude that the non-disparagement clause is invalid under the reasonable expectations doctrine.

Nor can the Court conclude that the clause is unconscionable. Under Arizona law, contract provisions can be procedurally or substantively unconscionable. Both are questions of law for the Court. *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 56 (Ariz.1995).

To evaluate procedural unconscionability, courts look to a contract's formation and factors that bear on the "voluntary meeting of the minds" such as age, education, intelligence, business experience, bargaining power, and who drafted the contract. *Maxwell*, 907 P.2d at 58 (quoting *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich.1976)). Defendants argue that "FreeLife wants to enforce a clause that (according to FreeLife's interpretation) exposes Mr. Burge to $23 million dollars in damages for making truthful statements." Dkt. #100 at 20. Procedural unconscionability, however, is assessed at the time the contract is made, not months or years later. Ariz. Rev. Stat. Ann. § 47-2302 (2009); *Maxwell,* 907 P.2d at 53. Defendants also argue that Burge's lack of legal expertise, the non-negotiability of the contract, and the fact that FreeLife drafted the contract show that Burge's agreement was not entirely voluntary. It is undisputed that the contract was drafted by FreeLife and presented on a take-it-or-leave it basis, that the non-disparagement clause was not explained to Burge outside of the terms of the policies and procedures, and that Burge is not a lawyer. These facts, however, are not sufficient to render the clause procedurally unconscionable. Arizona law does not hold that contracts of adhesion – which are by definition drafted by only one party and non-negotiable – are unenforceable. And in many jurisdictions, online contracts of adhesion are regularly upheld as long as the applicant expresses assent to the terms of the agreement. *See, e.g.*, *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007); *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 (2d Cir. 2002). In this case, FreeLife's website prominently called the applicants' attention to the policies and procedures that contained the plain-language non-disparagement clause. Burge looked at the policies and procedures and affirmatively clicked his agreement with

them. The Court does not find this procedure unconscionable.

Contracts are substantively unconscionable when they are "so one-sided as to oppress or unfairly surprise an innocent party." *Maxwell,* 907 P.2d at 58. As with procedural unconscionability, substantive unconscionability is determined as of the time when the contract was made. Ariz. Rev. Stat. Ann. § 47-2302 (2009); *Maxwell*, 907 P.2d at 53. Defendants' only argument for substantive unconscionability is Burge's current exposure to "millions of dollars in damages for speaking the truth." Dkt. #100 at 21. But such exposure is not oppressive or unfair. Burge was not exposed to millions of dollars in damages when the contract was formed, as required by Arizona law. Moreover, Burge does not dispute that he was presented with a copy of the policies and procedures which clearly contained the unambiguous non-disparagement clause and that he assented to them by clicking "I Accept." Dkt. #111. Burge accepted the contract with the non-disparagement clause and, now that he allegedly has breached it, cannot be heard to claim it is unfair because of the possible consequences of his breach.

Defendants also argue that the non-disparagement clause is unconstitutional because it violates Burge's First Amendment right to free speech. The First Amendment protects individuals from government infringement on speech, not private infringement. *George v. Pacific-CSC Work Furlough*, 91 F. 3d 1227, 1229 (9th Cir. 1996). There is no unconstitutional restriction of First Amendment rights in this case.

None of Defendants' arguments regarding the non-disparagement clause are persuasive. The Court concludes that the clause is enforceable.

**C.     "Disparage" must be given its plain meaning.**

Contract terms are construed according to the intent of the parties at the time the contract was made. *Polk v. Koerner*, 533 P.2d 660, 662 (Ariz. 1975). If the intent cannot be determined, contract terms will be given their plain meaning. *Horton v. Mitchell*, 29 P.3d 870, 874 (Ariz. Ct. App. 2001). In this case, neither party has attempted to argue the original intent of the parties regarding the non-disparagement clause, and there is no evidence as to that intent. The clause must therefore be interpreted according to its plain meaning.

Disparage means "[t]o bring discredit or reproach upon; to dishonour, discredit; to lower in credit or esteem." Oxford English Dictionary (2d ed. 1989). As the Court previously said, the ordinary meaning of this term does not require that the disparaging statement be false. Dkt. #65 at 2. Summary adjudication as to the interpretation of "disparage" will be granted.

### D. A jury must decide if Burge breached the non-disparagement clause.

For the Court to enter summary judgment on breach of the non-disparagement clause, the facts must be such that a reasonable jury could come to no conclusion other than that Burge's website disparages FreeLife or its products. Dkt. #98, Ex. 3; *see Anderson*, 477 U.S. at 248. Viewing the facts and drawing all inferences in Defendants' favor, the Court cannot say that a reasonable jury invariably would find Burge's website disparaging. Reasonable jurors might find FreeLife's claims about Himalayan Goji® Juice to be incredible and therefore find that Defendant's website does not further disparage it. Or they might conclude that statements on the website do not significantly detract from the quality of FreeLife's product. The disparaging effect of Burge's website must be assessed by the jury in this case.

### E. FreeLife is not limited to cancellation of the contract.

Defendants argue that the contract limits FreeLife to cancellation of the contract as a remedy for Burge's breach of the non-disparagement clause. Defendants base this limitation on a "question and answer" page at www.freelifefacts.com which states that "if an independent Marketing Executive makes untrue or unauthorized claims about the company's products" FreeLife can use corrective measures "ranging from a written warning or a fine to cancellation of the offender's Marketing Executive Agreement." Dkt. #101, Ex. 28 at 2. This language, however, appears on a website and page that are not part of the contract or the policies and procedures. Defendants have not shown that the language is part of the contract Burge entered into with FreeLife.

Defendants also argue that FreeLife is limited to cancellation of the contract based on paragraph 11 of the policies and procedures, which states that a marketing executive can "be subject to disciplinary action up to and including termination of [his] Marketing Agreement."

Dkt. #98, Ex. 3, ¶ 11. This paragraph, however, is not part of the non-disparagement clause and does not purport to limit that clause, but instead merely notifies marketing executives that their contracts may be cancelled if they engage in certain conduct. Paragraph 49 confirms this interpretation. Paragraph 49 is titled "Dispute Resolution and Disciplinary Proceedings" and provides that a marketing executive may be liable for monetary damages, stating that any violation of the marketing agreement may result in "corrective measures" including but not limited to "legal proceedings for monetary and/or equitable relief." Dkt. #98, Ex. 3, ¶ 49. The contract therefore does not limit the remedy for breach of the non-disparagement clause.

### F. There is a genuine issue of material fact on damages.

Defendants argue that Burge at most violated the non-disparagement clause for only 26 days and that FreeLife has not provided Defendants with an estimation of damages for the breach during this time period. Dkt. #100 at 25. Taking the facts in the light most favorable to FreeLife, however, the Court concludes that FreeLife has presented evidence of damages. FreeLife's expert, Edward McDonough, conducted an investigation and concluded that www.breathe.org caused damage to FreeLife. Dkt.# 97, Ex. H. FreeLife also presented testimony of several FreeLife marketing executives that www.breathe.org harmed the business. Dkt. #97, Ex. C at 60-61, Ex. D at 32-33. Defendants argue that this evidence is deficient, incomplete, and "highly suspect," but the persuasive force of the evidence is not for the Court to decide. Dkt. #100 at 16, 24. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The jury must determine whether this evidence shows that FreeLife has incurred damages.

### IV. FreeLife's defamation claim.

Defendants seek summary judgment on FreeLife's claim for defamation. The tort of defamation requires a false and defamatory statement of or concerning the plaintiff, an unprivileged publication of the statement to a third party, and fault on the part of the publisher. *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178, 180 (Ariz. App. 1985). A

plaintiff faces a higher burden if the plaintiff is a public figure or if the topic of the defamation is a matter of public concern. *Dombey v. Phoenix Newspapers, Inc.*, 724 P.2d 562, 567 (Ariz. 1986). A public figure plaintiff cannot collect damages unless he proves the defendant's statement was made with actual malice. *Id.* If the statement is about a private figure but involves a matter of public concern, the plaintiff must prove actual malice to recover presumed or punitive damages, but may recover actual damages on a showing of simple negligence. *Id.*

Defendants argue they are entitled to summary judgment on FreeLife's defamation claim because (1) FreeLife is a public figure as a matter of law and cannot prove malice, (2) there are no defamatory statements on www.breathe.org, and (3) FreeLife cannot prove actual damages, which are required in this case because it concerns matters of public importance. The Court finds none of these arguments persuasive.

**A.     FreeLife is not a public figure.**

A plaintiff is a public figure if he either achieves "such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts," or if he "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Individuals usually are classified as public figures when they "have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Id.* at 345. Those individuals who are "drawn into public debate or controversy 'largely against their will' in order to meet charges leveled against them in the media or to respond to actions brought against them, are not public figures." *Dombey*, 724 P.2d at 569-70 (quoting *Wolston v. Reader's Digest Ass'n., Inc.*, 443 U.S. 157, 167 (1979).

Defendants do not contend that FreeLife has achieved such pervasive notoriety as to be a public figure for all purposes. Defendants instead argue that FreeLife is a public figure for a "limited range of issues," including the quality and nature of its products. Dkt. #100 at 7. Defendants note that FreeLife advertises its products and has commissioned clinical trials that it uses in its marketing literature. Dkt. #100 at 7. But marketing activities do not

1  transform a private figure into a public figure. *See Vegod Corp. v. Am. Broad. Cos.*, 603 P.2d
2  14, 18 (Cal. 1980) (stating that "[w]hile availability of goods for sale and their quality are
3  matters of public interest," this is not the test for determining if a plaintiff is a public figure);
4  *Dombey*, 724 P.2d at 569 ("A private individual is not automatically transformed into a
5  public figure just by becoming involved in or associated with a matter that attracts public
6  attention."). The test is not whether a matter is in the "public interest," but instead whether
7  a plaintiff "voluntarily injects himself or is drawn into a particular public controversy."
8  *Gertz*, 418 U.S. at 351.

9  The evidence in this case does not show any public controversy regarding the quality
10 of FreeLife's products until Burge created controversy with his www.breathe.org website.
11 FreeLife entered this controversy to "meet charges leveled against [it]." *Dombey*, 724 P.2d
12 at 570. FreeLife is not a public figure for this "limited range of issues" merely because it
13 filed this lawsuit and has sought to counter information presented on www.breathe.org.
14 *Gertz*, 418 U.S. at 351.

15 Because FreeLife is not a public figure, FreeLife need not show clear and convincing
16 evidence of malice. The Court therefore will not consider Defendants' arguments that
17 FreeLife failed to make a prima facie showing of malice.

18 **B.  A jury must decide if Defendants' statements are defamatory.**

19 Defendants argue that there are no defamatory statements at www.breathe.org. They
20 claim that all statements alleged to be defamatory are either not defamatory, are statements
21 of opinion, or are substantially true. Dkt. #100 at 11. Defendants' motion focuses on 13
22 specific statements alleged by FreeLife to be false and defamatory. The Court need only
23 address two of the statements to show that summary judgement cannot be entered for either
24 party on the defamatory nature of Defendants' assertions.

25 Statement 3 consists of Defendants' claim that FreeLife used "raw and unheated" as
26 a "major selling pitch" for Himalayan Goji® Juice. Dkt. #100 at 11. Statement 4 is
27 Defendants' claim that FreeLife "puts out enormous effort to assure people that their juice
28 is 100% raw and never heated." *Id*. (quotation marks omitted). To show the truthfulness of

these statements, Defendants cite several examples of FreeLife officers and senior marketing executives asserting that Goji juice is raw and unheated. *Id.* at 12. To show the falsity of these statements, FreeLife provides evidence that it does not market the juice raw (Dkt. #108, ¶ 22), and therefore argues that Defendants' claim of "enormous effort" and a "major selling pitch" are false. In other words, FreeLife admits that its juice is heated to 270 degrees (Dkt. #108, ¶ 24 (and citations)), but disputes the claims made by Defendants about its marketing efforts. Although reasonable jurors might well conclude that Burge's statements are not false and defamatory because FreeLife's multi-level marketing chain did clearly assert that the juice was raw and unheated, jurors might also conclude that these assertions were made by FreeLife's independent sales people, not by FreeLife, and that Defendants assertions therefore are not accurate. Given this factual dispute, the Court cannot grant summary judgment for Defendants on the ground that the statements are not defamatory.[3]

**C. A jury must decide whether FreeLife sustained actual damages.**

Defendants argue that FreeLife has provided no evidence of actual damages. As noted above, FreeLife's expert evidence, in combination with the testimony of FreeLife marketing executives, creates a disputed issue of fact with respect to the existence of actual damages.

**V. FreeLife's intentional interference with contract claim.**

Defendants seek summary judgment on FreeLife's claim for intentional interference with contract because they are not liable for defamation and therefore cannot be liable for intentional interference with contract. *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 973 (3d Cir.

---

[3] FreeLife claims that it affirmatively discloses to its marketing organization that the Goji juice is heated briefly. Dkt. #108, ¶ 23. But the evidence cited in support of this assertion provides virtually no support. The marketing materials attached to the supporting declaration begin with "THE COLD FACTS." Dkt. #109, Ex. 3. The materials then say the juice is not subjected to "the prolonged application of heat found in pasteurization, hot-filling, or other traditional bottling methods." *Id*. The materials never say the juice is heated, and the beginning reference to the "cold facts" implies otherwise. The deposition testimony cited by FreeLife consists of the simple assertion that heating was disclosed. Dkt. #108, Ex. P at 49-50, 92. It contains no evidence of when or where. *Id*. Thus, FreeLife has failed to present evidence that the heating is disclosed to its marketing organization. This failure does not make Defendants's statement truthful, however, because there remains an issue of fact as to whether FreeLife uses the unheated nature of its juice as a major selling point.

1985) (stating that unless defendants "can be found liable for defamation, the intentional interference with contractual relations count is not actionable"). The Court has denied Defendants' motion for summary judgment as to the defamation claim.

Defendants also argue that FreeLife presented no evidence of damages to business expectancies as a result of the www.breathe.org website. But FreeLife's expert, Edward McDonough, conducted an investigation and concluded that www.breathe.org caused damage to FreeLife. Dkt.# 97, Ex. H. Defendants' motion for summary judgment as to FreeLife's intentional interference with contract claim will be denied.

## VI. Burge's defamation counterclaim.

FreeLife argues that summary judgment is appropriate on Burge's counterclaim for defamation because Burge fails to show that the alleged defamation is "of or concerning" Burge. *See Boswell*, 730 P.2d at 180. Defamatory statements must be published in such a manner that they reasonably relate to specific individuals. *Rosenblatt v. Baer*, 383 U.S. 75, 82 (1966). A plaintiff must show that "the recipient of the defamatory communication understand[s] it as intended to refer to the plaintiff." Restatement (Second) Torts § 564, cmt. a (1977).

The FreeLife response letter does not refer to Burge by name, but Defendants argue that the letter is clearly "of or concerning" Burge because it defames the owner of the www.breathe.org website and Burge was disclosed as the owner of the website in this litigation. Defendants present no other evidence as to how a reader of the letter could know that Burge was the subject. In other words, Defendants rely on this lawsuit as the means of perfecting Burge's defamation claim.

Arizona law bars defamation claims where the allegedly defamatory act occurs during litigation. *Hall v. Smith*, 152 P.3d 1192, 1195 (Ariz. App. 2007). Although in this case the allegedly defamatory statements were made before litigation, the statements could not be linked to Burge but for an identification made in the course of this lawsuit. In other words, Burge would have no claim for defamation but for this litigation. The litigation privilege was created for just such a situation – to allow "fearless prosecution" of claims. *Id.* Allowing

1  a party to perfect an element of his claim through litigation would chill litigation and run
2  afoul of the policy behind the litigation privilege. *Id.* Defendants offer no non-privileged
3  means by which a potential reader could link Burge with the FreeLife response letter. For
4  this reason, FreeLife is entitled to summary judgment as to Burge's counterclaim for
5  defamation.

**VII.    Defendants' motion not to file documents under seal.**

Because they include matters designated confidential by FreeLife during the course of the litigation, Defendants filed their motion for summary judgment and accompanying statement of facts under seal. Dkt. #95. Defendants ask the Court, however, to rule that the documents may not be filed under seal. FreeLife opposes the motion only as to portions of the damage report of Ed McDonough (Dkt. #101, Ex. 25) and portions of the deposition of Peter Reilly (Dkt. #101, Ex. 4). Dkt. #102 at. 2-3.

Defendants argue that the protective order in this case (Dkt. #74) requires FreeLife to show a "compelling reason" why the material should be sealed. Dkt. #95 at 2. A "'compelling reasons' standard applies to most judicial records." *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106, 1115 (9th Cir. 2009) (citing *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006); *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003)). In particular, documents attached to dispositive motions are governed by the compelling reasons standard. *See San Jose Mercury News*, 187 F.3d at 1102; *Foltz*, 331 F.3d at 1136. This higher standard applies because the resolution of a dispute on the merits "is at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Kamakana*, 447 F.3d at 1179 (citation omitted).

FreeLife argues that the expert report and deposition testimony must remain sealed because they reveal trade secrets. Dkt. #102 at 5. These documents disclose the profits and losses of FreeLife, monthly and yearly sales figures, and compensation of marketing executives. *Id.* FreeLife admits that such figures generally are not classified as trade secrets, but argues that, as a multi-level marketing company, financial information is far more

1 confidential than in most companies because "[o]ne of the easiest ways to convince a marketing executive to switch companies is to convince that marketing executive that he or she will make more money at a different company." *Id.* at 5-6. FreeLife argues that if these documents are made public, it may lose marketing executives. FreeLife also notes that Burge may post the information on www.breathe.org. *Id.* at 6-7.

"Under the [*Kamakana*] 'compelling reasons' standard, a district court must weigh 'relevant factors,' base its decision 'on a compelling reason,' and 'articulate the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Pintos*, 565 F.3d at 1116. FreeLife has provided a declaration of Christopher Reid. Dkt. #102-1. Reid avers that the profit and compensation "information would damage FreeLife if it fell into the hands of FreeLife's competitors." *Id.*, ¶ 6. He states that competitors have used this sort of information against FreeLife in the past. *Id.*, ¶ 7.

Reid establishes that FreeLife has good reason for keeping this information confidential. What is more, the information is not central to the issues in this case and making it public is not necessary for the public to understand the parties' positions or the Court's ruling. Balancing FreeLife's interest in protecting the information against the public's need to know, the Court concludes that FreeLife has satisfied the compelling interest test. The Court will therefore permit Defendants' motion and statement of facts to be unsealed except for the portions of the damage report of Ed McDonough (Dkt. #101, Ex. 25) and the deposition of Peter Reilly (Dkt. #101, Ex. 4) identified by FreeLife as competitively sensitive information. Dkt. #102 at 2-3.

**VIII. FreeLife and Defendants' joint motion to seal.**

FreeLife and Defendants filed a joint motion to seal (Dkt. #105) exhibit A in FreeLife's statement of facts (Dkt. #97). Exhibit A includes Burge's social security number. Dkt. #97-2 at 10. Given the modern risks of identity theft, the Court finds that exhibit A should be sealed.

**IX. FreeLife's motion for leave to file surreply.**

FreeLife filed a motion for leave to file surreply. Dkt. #116. The Court has ruled in

FreeLife's favor on the issues it wishes to brief, and the motion is therefore moot.

**IT IS ORDERED:**

1. FreeLife's motion for summary adjudication (Dkt. #96) is **granted in part and denied in part**. Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, the Court finds that the following facts are not genuinely at issues and therefore resolves them in favor of FreeLife: (A) FreeLife and Burge entered into an enforceable contract, (B) the contract contained an enforceable non-disparagement clause, and (C) the term "disparage" should be interpreted according to its plain meaning.

2. FreeLife's motion for summary judgment on Burge's counterclaim (Dkt. #96) is **granted**.

3. The Clerk is directed to file Defendants' motion for summary judgment (Dkt. #100) **unsealed**.

4. Defendants' motion for summary judgment (Dkt. #100) is **denied**.

5. Defendants' motion not to file documents under seal (Dkt. #95) is **granted in part and denied in part** as set forth above. Defendants shall re-file their separate statement of facts in support of motion for summary judgment consistent with this order.

6. FreeLife and Defendants' joint motion to seal (Dkt. #105) is **granted**.

7. FreeLife's motion for leave to file a surreply (Dkt. #116) is **denied**.

8. The Court will schedule a final pretrial conference by separate order.

DATED this 1st day of October, 2009.

_____
David G. Campbell
United States District Judge