**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| FreeLife International, Inc., a Connecticut corporation,<br><br>Plaintiff,<br><br>vs.<br><br>American Educational Music Publications Inc., a Delaware corporation; David Lucas Burge,<br><br>Defendants/Counterclaimants | No. CV07-2210-PHX-DGC<br><br>**ORDER** |

Defendants have filed a motion to exclude the testimony of FreeLife's expert, Michael Sheffield. Dkt. #166. FreeLife has filed a motion to exclude the testimony of Defendants' rebuttal expert, Jon Taylor. Dkt. #165. Both motions are fully briefed. Dkt. ##168, 176, 170, 174. For reasons that follow, the Court will grant both motions in part.[1]

**I.     Background.**

FreeLife is a multi-level marketing ("MLM") company that markets and distributes products through a network of individual distributors. In late September of 2007, Defendant Burge launched a website titled www.breathe.org that contained commentary and articles regarding FreeLife's products, marketing strategies, and compensation system that, according

---

[1] FreeLife's request for oral argument is denied. The parties have fully briefed the issues and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

to FreeLife, is disparaging and defamatory. FreeLife filed suit against Defendants Burge and American Educational Music Publications, Inc., alleging defamation, intentional interference with contract, and breach of contract.

Both parties seek to call experts to testify at trial. FreeLife wishes to call Michael L. Sheffield to provide background information on the MLM industry, to discuss the damage that can be caused to a MLM company when its products are disparaged, and to opine on the nature of www.breathe.org and the damage caused to FreeLife. *See* Dkt. #166-1 at 2-18. Defendants wish to call Dr. Jon M. Taylor as a rebuttal witness. In his report, Taylor provides a history of MLMs, discusses how most MLMs are product-based pyramid schemes, concludes that FreeLife is a product-based pyramid scheme, and discusses the need for consumer advocates to stop MLM schemes. Dkt. #165-1 at 3-68.

## II. Legal Standard.

Expert testimony is admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," if the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and if the proposed testimony is sufficiently reliable. Fed R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993). Expert testimony is sufficiently reliable "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Rule 702 imposes a special obligation on trial judges to ensure that expert testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 583. "In serving its gatekeeping function, the court must be careful not to cross over into the role of factfinder. It is not the job of the court to insure that the evidence heard by the jury is error-free, but to insure that it is not wholly unreliable." *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F.Supp.2d 908, 928 (W.D. Wis. 2007). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

### III. Preliminary Observations.

The Court notes as an initial matter that the trial in this case will not be about the legitimacy of the MLM industry. The trial will concern the specific claims asserted by FreeLife and defenses asserted by Defendants.

Much of the material contained in the reports of Sheffield and Taylor is irrelevant to this case. Many of their assertions pose a risk of appealing to the jury's emotions, or seek to gain advantage by tarring the other side. As a result, these witnesses will not be permitted to range broadly through the world of MLM, telling the jury why it is wonderful or why it is evil, sharing war stories or personal experience, or making broad assertions and accusations against the other side. Because of the potential for unfair prejudice, these witnesses will be held to a strict standard of relevancy. Their testimony will be admitted only if directly supportive of a claim or defense. Open-ended questions should not be asked. If a relevancy objection is made, the party eliciting the testimony must be prepared to explain *precisely* why the requested testimony relates to a specific claim or defense in this case.[2]

Because Dr. Taylor has been disclosed in rebuttal to Mr. Sheffield, the relevancy of his testimony will depend in part on the testimony Sheffield is permitted to give. As noted below, Defendants have not provided enough specificity for the Court at this stage to exclude general testimony of Sheffield about MLM, but the Court considers much that is in Section I of his report to be irrelevant. The relevancy of Taylor's testimony will be determined in part by the permitted scope of Sheffield's testimony.

### IV. Defendants' Motion.

Defendants divide the testimony of Michael Sheffield into five different categories: (1) opinions on the general nature of the MLM industry, (2) opinions on the counter-cyclical nature of the MLM industry, (3) opinions on the nature of the www.breathe.org website,

---

[2] The Court recognizes that some of Defendants' allegedly false statements relate to the multi-level nature of Freelife's business. *See* Dkt. #126 at 10, ¶¶ (x), (xi), (xii). In making admissibility decisions concerning these claims, the Court will hold the parties close to the claims and not permit free-wheeling opinions.

(4) opinions on causation, and (5) opinions on damages.

**A. General Nature of the Industry.**

Defendants contend that Sheffield's opinion on the history of the MLM industry, which is found in Section I of Sheffield's report (Dkt. #166-1 at 3-14), is an irrelevant and improper attempt to praise MLM companies and to convince the jury that FreeLife is a reputable company with a reputable marketing structure. They also argue that this testimony will confuse and mislead the jury and will prejudice Defendants. Dkt. #166 at 4-5. Defendants admit that some information on the history of MLM companies will be necessary and that Sheffield is qualified to testify about that history, but argue that his report goes beyond what is necessary and will confuse the jury and prejudice Defendants.

Defendants do not explain which portions of Sheffield's report are relevant and which are not. They do not explain which parts are confusing, misleading, or prejudicial. They make the bare assertion, unsupported by any legal authority or citations to Sheffield's report, that Sheffield's proposed testimony is improper. This is not sufficient for the Court to exclude his testimony *in limine*.[3]

**B. Counter-cyclical Nature of the Industry.**

Defendants object to Sheffield's proposed testimony that "the [MLM] industry seems to be counter cyclical in that it prospers when economic times are in a downturn." Dkt. #166-1 at 18. They argue that this opinion should be excluded because (1) it is not supported by sufficient facts and data as required by Rule 702, and (2) the counter-cyclical nature of the industry "cannot be simply translated into the proposition that FreeLife itself should have experienced an increase in sales during a time of economic downturn." Dkt. #166 at 6.

In his report and in his deposition, Sheffield stated that his opinion as to the counter-cyclical nature of the MLM industry is based on data from the Direct Selling Association.

---

[3] By denying a motion *in limine*, the Court does not rule that the testimony is admissible. Defendants may still make relevancy or other objections at trial.

- 4 -

1  Dkt. #166-1 at 15; Dkt. #166-2 at 6-7. Defendants contend that this data is insufficient because Sheffield has never actually seen it, but rather heard it while attending the Direct Selling Association annual convention. If the data heard at the convention were the only basis for Sheffield's opinion, the Court would agree. Sheffield also states, however, that his opinion is based on 30 years in the MLM industry and his current observations as to how MLM companies are performing in the ongoing economic downturn. *Id.* Given these additional grounds for his opinion, the Court concludes that any insufficiencies in the data he cites go to the weight of his opinion, not its admissibility. Defendants will be free to point out on cross-examination that Sheffield has never seen the data he cites in support of his opinion.[4]

Defendants also contend that Sheffield's testimony should be excluded "because the countercyclical nature of the MLM industry as a whole cannot be simply translated into the proposition that FreeLife itself should have experienced an increase in sales during a time of economic downturn." Dkt. #166 at 6. They contend that Sheffield has no facts or data on which to support this opinion, but Sheffield again bases his opinion that FreeLife should have had an increase in new recruits during the current economic downturn on his experience and personal observations over 30 years in the MLM industry. Dkt. #166-1 at 15, 18. He also cites FreeLife data for the last few years. *Id.* The fact that Sheffield apparently has done no study of FreeLife's historical performance in downtimes or of its performance generally can be noted by Defendants on cross-examination. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are "the traditional and appropriate means" of attacking expert testimony. *Daubert*, 509 U.S. at 595.[5]

---

[4] Defendants argue, for the first time in their reply brief, that "Sheffield's 'personal observations' over 30 years are not 'of a type reasonably relied upon by experts in the particular field in forming opinions.'" Dkt. #176 at 3. Arguments made for the first time in a reply brief will not be considered by the Court. *See Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008).

[5] The Court notes, for the benefit of both sides, that it will not permit experts to give testimony not presented in their expert reports. Rule 26(a)(2)(B)(i) requires that expert

The Court also notes that Defendants' expert intends to opine that the downturn in FreeLife's sales is due to the current economic downturn, not to Defendants' website. Given this argument, it is only fair that FreeLife be permitted to explain why the economic downturn would not necessarily produce a drop in sales.

**C. The www.breathe.org website.**

Defendants argue that Sheffield should not be permitted to opine on the content of Defendants' website, www.breathe.org. They contend that it is improper for him to state that the website "is one of the most aggressive attacks that [he has] seen," that the attacks are "malicious in nature," that they are "unfounded innuendo," or that they have caused a "sullied reputation." Dkt. #166 at 7. The Court agrees.

Sheffield does not purport to know whether the statements on Defendants' website are true or false, nor whether FreeLife's marketing of Goji juice is accurate or truthful. Sheffield does not claim to have studied the bases for Defendants' statements or to have formed opinions on whether Defendants acted with malice. Sheffield thus has no reliable basis for opining on whether the statements are malicious or unfounded. Whether or not they seem "aggressive" to Sheffield is not relevant to any of FreeLife's claims. The Court will grant this portion of Defendant's motion.

**D. Causation.**

Defendants argue that Sheffield should not be allowed to opine that "the ongoing presence of the breathe.org website has contributed to a growing doubt by the FreeLife independent distributors regarding Himalayan juice." Dkt. #166 at 8. They argue that Sheffield is relying on "various FreeLife distributor depositions" and other documents that are "completely unsuitable for such a causation analysis." *Id.* In effect, Defendants argue that Sheffield has no basis for his opinion that MLM companies are unusually susceptible to negative advertising and that his review of FreeLife distributor depositions confirms that

---

reports set forth "a complete statement of all opinions the witness will express and the basis and reasons for them." Experts will not be permitted to express opinions or to provide bases or reasons for the opinions that are not in their reports.

negative advertising has affected FreeLife.

The Court cannot at this point conclude that Sheffield lacks a basis for such opinions. As noted above, he has 30 years' experience in the MLM business. This experience might provide a reliable basis for opinions about the effect of negative publicity on MLM companies. His review of the sworn testimony of FreeLife distributors concerning the effect of Defendants' statements on their business might support opinions concerning the effect of Defendants' website on FreeLife. If Defendants believe sufficient foundation has not been laid for opinions during trial, they can object at that time. The Court cannot conclude at this stage, however, that Sheffield's opinions on causation so clearly lack foundation that a motion *in limine* should be granted.

**E. Damages.**

Defendants contend that Sheffield should not be allowed to opine that "if the breathe website is allowed to remain, it could be the END of the Goji and GoChi product lines." Dkt. #166 at 9 (emphasis in Sheffield report). The Court agrees.

Sheffield does not purport to have conducted an analysis of the Goji or GiChi product lines, their past performance, or their future prospects. He provides no analysis concerning the expected future sales of these products, and he states no opinion as to whether their demise is likely if Defendants' website continues. He states only that continuation of the website "could" result in failure of these products. *Id*. Such an uncertain opinion, based on no analysis specific to the product lines he is addressing, amounts to nothing more than speculation. Because an opinion on the possible demise of significant product lines could influence the jury to award substantial damages for future lost sales, and it is founded on no reliable basis, the Court will grant Defendants' motion on this issue.[6]

---

[6] Defendants' motion focuses solely on Sheffield's opinion that continuation of the website "could be the END of the Goji and GoChi product lines." *See* Dkt. #166 at 9-10. Defendants seek in their reply to expand the motion to include "other 'damages' opinions" offered by Sheffield. *See* Dkt. #176 at 6. Defendants' motion cannot be expanded in a reply brief. The Court's ruling is therefore limited to the statement identified in the motion.

- 7 -

1  **V.    FreeLife's Motion.**

2  FreeLife has moved to exclude the testimony of Defendants' rebuttal expert, Jon
3  Taylor. Dkt. #165. FreeLife contends that certain portions of his testimony are inadmissible
4  for one of three reasons: (1) they are not relevant, (2) they are not reliable, and (3) they are
5  not rebuttal to any of FreeLife's experts. Dkt. #165 at 2.

6  **A.    Reliability.**

7  In arguing that Dr. Taylor's opinions are not reliable, FreeLife focuses primarily on
8  the scientific-reliability factors identified by the Supreme Court in *Daubert*. FreeLife argues,
9  for example, that Dr. Taylor's calculations are flawed, his conclusions have not been peer
10 reviewed, his methodology has not been tested, and no error rate is identified. Although
11 these arguments might be relevant if Dr. Taylor is permitted to express opinions based on
12 precise calculations, most of his opinions are based on his general experience with the
13 industry – the same basis relied on by Mr. Sheffield. As to these general matters, the Court
14 cannot conclude at this stage that Taylor's conclusions are so unreliable as to be
15 inadmissible.

16 Dr. Taylor has an MBA and a Ph.D. in applied psychology. He has taught college-
17 level courses in finance, entrepreneurship, and business ethics. He is President of the
18 Consumer Awareness Institute, has spent years studying the MLM industry, and has
19 published numerous articles and at least one book on the industry. He has consulted on
20 MLM proceedings throughout the country, including with the attorneys general of several
21 states. Given these general qualifications, the Court cannot conclude that all of his opinions
22 should be excluded as unreliable. Much of Taylor's testimony is based on his experience.
23 As the Ninth Circuit has noted, "[t]he *Daubert* factors (peer review, publication, potential
24 error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends
25 heavily on the knowledge and experience of the expert, rather than the methodology or
26 theory behind it." *U.S. v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000).[7]

27
28  [7] FreeLife places much emphasis on the fact that Dr. Taylor formed some of his
opinions before he was retained in this litigation, as though this makes the opinions suspect.

To the extent Dr. Taylor is asked to opine on a specific calculation or determination and the Court considers it relevant, FreeLife may object on reliability grounds, may voir dire the witness if necessary, and the Court will rule on the objection. The Court cannot, however, conclude at this point that all of his testimony should be excluded as unreliable.

**B. Relevance.**

FreeLife contends that Taylor's discussion of whether FreeLife or other MLMs are pyramid schemes, and his conclusion that most MLM participants lose money, are irrelevant. FreeLife contends that many other opinions of Taylor are inadmissible because they are legal conclusions, ad hominem attacks, generalized grievances, or cheerleading for Burge. Specifically, FreeLife objects to admission of the following statements: (1) FreeLife is a pyramid scheme, (2) MLM businesses are illegal under existing law, (3) federal and state authorities are not properly interpreting and enforcing pyramid scheme laws, (4) the present litigation is a "nuisance lawsuit," (5) "[a] product-based pyramid scheme, a.k.a. MLM . . . is no more a legitimate form of direct selling than a pig placed in a horse corral is a horse," (6) MLM is "evil[]," (7) the Direct Selling Association is "deprav[ed]," (8) MLM is "immoral" and "unethical," (9) MLM is "shady," (10) any portion of Taylor's testimony or report that is generalized, (11) Burge is performing a "valuable public service" with the website, (12) it is "definitely in the public interest" for Burge to continue his website, (13) Burge is a "true hero" because he is "taking such risks in standing up for consumer protection," (14) Burge should be "applaud[ed] for his courage," (15) Burge's efforts to "expose FreeLife" should be encouraged, (16) "[i]t took great courage to do what Mr. Burge did," and (17) Taylor "congratulate[s] Mr. Burge for his courage." Dkt. ##165 at 13-15.

The Court agrees that virtually all of these statements are irrelevant to any genuine issue in this case and, potentially, are unduly prejudicial. Because the Court has not yet

---

Other cases have recognized this fact as supporting reliability, not detracting from it. *See*, *e.g.*, *U.S. v. Feliciano*, CR-08-0932-PHX-DGC, 2009 WL 3748588 at *2 (D. Ariz., Nov. 6, 2009) (stating that courts should consider "whether the expert is proposing to testify about matters growing naturally and directly out of research the expert has conducted independent of the litigation").

heard Sheffield's testimony, and Taylor will appear as a rebuttal witness, it would be unwise to start ruling that statements by Taylor on particular subjects are inadmissible. The Court does, however, reach the following conclusions *in limine* and grants FreeLife's motion to this extent:

    a.    Dr. Taylor will not be permitted to use the word "pyramid." Defendants' allegedly defamatory statements do not include this word, it carries much negative baggage, and it would do little to inform the jury and potentially much to inflame it.

    b.    The legality of MLM businesses is not at issue, nor are the reasons why law enforcement authorities may or may not be pursuing them.

    c.    Neither expert will be permitted to use words such as evil, depraved, immoral, unethical, or shady. Similar positive descriptors will also be prohibited. Opinions will address the facts of this case.

    d.    Whether Defendants are heroic in some persons' eyes is not relevant to any claim or defense in this case.

**C. Rebuttal.**

Finally, FreeLife argues that Taylor is a rebuttal witness and can do nothing more than respond to the opinions by Sheffield or other FreeLife experts. The Case Management Order made clear that rebuttal experts "are limited to responding to opinions stated by initial experts." Dkt. #24, ¶ 5(c). As the foregoing discussion indicates, Taylor's testimony will be limited to rebutting Sheffield's testimony. Because the Court presently does not know the precise contours of Sheffield's testimony, it cannot yet delineate Taylor's testimony, but the Court fully intends to remain true to its statement in the Case Management Order.

**VI. FreeLife's Motion *in Limine* No. 8.**

FreeLife has filed a motion *in limine* asking the Court to exclude any evidence regarding pyramid schemes or product-based pyramid schemes. *See* Dkt. #136. The Court cannot at this point say that all testimony on the nature of MLM businesses will be inadmissible. To the extent such testimony is directly relevant to a claim or defense and has been previously disclosed, it may well be admitted. The Court will, however, grant

FreeLife's motion with regard to the use of the word "pyramid." As already indicated, that word is not among the statements FreeLife claims to have been defamatory and carries the potential of prejudice.

**IT IS ORDERED:**

1. Defendants' motion to exclude expert testimony (Dkt. #166) is **granted in part**.
2. FreeLife's motion to exclude expert testimony (Dkt. #165) is **granted in part**.
3. FreeLife's motion *in limine* No. 8 (Dkt. #136) is **granted** with respect to use of the word "pyramid."

DATED this 25th day of March, 2010.

_____
David G. Campbell
United States District Judge